**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARANZ LAMONT DAVIS,

       Petitioner,

                                             CASE NO. 04-CV-40087-FL

v.                                      HONORABLE PAUL V. GADOLA
                                             UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Maranz Lamont Davis, ("Petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his convictions for armed robbery, M.C.L.A. 750.529; assault with intent to do great bodily harm, M.C.L.A. 750.84; felonious assault, M.C.L.A. 750.82; and being a second-felony habitual offender, M.C.L.A. 769.10. For the reasons stated below, the petition for writ of habeas corpus is denied.

**I. Background**

Petitioner was convicted of the above charges following a jury trial in the St. Joseph County Circuit Court. Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent does not dispute these facts in its answer or in its motion to dismiss the supplemental petition. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).

1

Petitioner's conviction arose out of the robbery of the Burger King restaurant in Three Rivers, Michigan in the early morning hours of December 12, 1999.  Witnesses who worked at the restaurant described the perpetrator as a man wearing a black or navy blue poncho and a light-colored mask that appeared to be a pillowcase with eye holes cut out.  The suspect's eyes were dark and the skin around the eyes was described as black or brown.  The suspect was armed with a knife and gun.  None of the eyewitnesses, however, could positively identify the suspect.

Attempting to enter the restaurant through the back door, the perpetrator pointed his gun at the head of Daniel Lindhurst, an employee who was outside, in back of the restaurant, and asked him if he was the manager.  Lindhurst informed the man that he was not the manager.  At this point, Travous Snider, the actual manager of the restaurant, came out of the back door.  The perpetrator then ordered Snider to open the back door.  When Snider replied that he could not open the door because it was locked from inside, the suspect stabbed Snider in the neck.  Snider then pounded on the door, which was opened by another employee who was still inside the building.  The perpetrator ordered all of the employees to get down on the floor of the restaurant office.  While Snider was attempting to open the safe in the office, the perpetrator hit another employee, Crystal Sussdorf, in the head with his gun.  The suspect took about $1,600.00 from the restaurant's deposit bag and then left.

Several of the Burger King employees testified that a man named Mike McQueen worked at the Burger King, but had not appeared for work that night, even though he was scheduled to do so.  McQueen had a problem with one of the managers the week before.  Snider, however, testified that he did not believe that McQueen had been his assailant.  Sussdorf testified that she was friends

2

with McQueen and that his voice was different from the perpetrator's voice, although she acknowledged that the perpetrator's voice sounded as if it was disguised. Sussdorf admitted telling the police that she had initially speculated that McQueen or another man named Yancey Norman had been the assailant.

Detective Earl Stark was the original officer in charge of the case. Stark was informed that Kay Ballard, an employee of a nearby Shell-Mart, had reported that someone by the name of Mike who worked at the Burger King had come into the Shell-Mart within a couple of hours of the robbery, and that he was wearing clothing that matched the description of the suspect's clothing. Stark reviewed a security videotape from the market. Two still photographs from the videotape, taken around 5:00 a.m., showed the person who had been identified by Ballard as "Mike." Stark also interviewed Mike McQueen. In response to a question by the prosecutor, Stark testified that after he interviewed McQueen, as well as some other individuals who provided an alibi for McQueen, McQueen was eliminated as a suspect.

Detective Michael Mohney became the officer in charge of the case after the preliminary examination. After reviewing the videotape from the Shell-Mart of the times that Kay Ballard had been working there on the night in question, Mohney determined that the two males who appeared on the tape at approximately 5:00 a.m. on December 12, 1999 were Stanley Moore and Carlos Rodriguez. Mohney further indicated that he pursued various avenues of investigation, but that "the Mike McQueen one...it didn't, in my opinion, pan out."

A pair of socks and a pillowcase with eye holes were found on the ground of a trailer park almost directly behind the Burger King. The pillowcase was submitted for forensic testing. No

3

African-American hairs were found on the pillowcase. This was significant, because Petitioner is an African-American. A Caucasian hair was found on the pillowcase, but the color did not match that of Petitioner's friend, Nicholas Payne.

Trentice Hardy was a friend of Petitioner. A week or two after Christmas of 1999, Petitioner told Hardy that he had robbed the Burger King and had originally planned for Nicholas Payne to assist him, but that Payne refused. Petitioner told Hardy that he had worn a pillowcase on his head and had brought a knife and a fake gun. Petitioner told Hardy that he had pointed the fake gun at the store manager and had then stabbed him in the neck. The manager then went into the store office, opened the safe, and money was taken. Petitioner showed Hardy two bundles of money which were inside of brown paper.

Nicholas Payne testified that beginning around Thanksgiving of 1999, Petitioner asked him whether he wanted to help him make some money. Each time, Payne refused the offer. However, after Payne declined the offer Petitioner made near the beginning of December 1999, Petitioner took a pillowcase from Payne's bed. Petitioner returned the next day with the pillowcase he had taken, but now, eyeholes had been cut out of it. Payne subsequently tried the pillowcase on.

After this incident, Payne did not see Petitioner for several weeks, which was unusual. When Payne again saw Petitioner in January of 2000, Petitioner asked Payne if he heard what had taken place at the Burger King. Petitioner then snickered and smiled at Payne.

Eileen Payne, Nicholas' mother, testified that shortly before Christmas of 1999, Petitioner stopped coming around their house. Nicholas initially told her that he and Petitioner had a falling out. However, when Eileen Payne asked him again, a few weeks after New Year's Day, Nicholas

4

told her that Petitioner had asked him to rob the Burger King, but that he refused.

Eric Welch was another friend of Petitioner. Welch testified that sometime in December of 1999, Petitioner told Welch that he had robbed the Burger King. Petitioner told Welch that he did so using a fake gun and a knife. Petitioner told Welch that he struck the manager in the throat with a knife when the manager told him there was no money. Petitioner also told Welch that he had taken sixteen hundred dollars in the robbery.

Kay Ballard testified as a defense witness. Ballard testified that she was working at the Shell station in Three Rivers, Michigan in the early morning hours of December 12, 1999. A police officer entered the station and asked her if she had seen anyone come in. Ballard replied that she had not. After the officer left, a group of people entered the station, talking about a robbery and a stabbing at the Burger King. Ballard testified that Mike McQueen, whom she was acquainted with, was one of these people. Ballard testified that another one of the persons with McQueen was wearing a blue hooded sweat jacket. Ballard wrote out a statement to the police later that morning.

Petitioner was convicted by jury trial in the St. Joseph County Circuit Court. Petitioner's conviction was affirmed on appeal. *People v. Davis,* No. 230874, 2002 WL 1998568 (Mich.Ct. App. August 27, 2002); *lv. den.* 468 Mich. 873, 659 N.W. 2d 234 (2003).

On March 9, 2004, Petitioner filed a petition for a writ of habeas corpus on the following grounds:

    I.     The exclusion of defendant from portions of the jury voir dire was constitutional error requiring reversal of his convictions.

    II.    The trial court erred reversibly in not denying the prosecution's request to allow the complainants, if defendant testified, to listen to his testimony for

purposes of making a voice identification.

III.    The prosecutor violated the hearsay rule and defendant's right to confrontation by eliciting police testimony to the effect that they had interviewed Mike McQueen and other witnesses and eliminated McQueen as a suspect.

Respondent answered the petition on October 12, 2004. On March 28, 2006, Petitioner filed a motion to supplement his petition, which was granted on May 30, 2006. On June 29, 2006, Petitioner filed a supplemental petition and brief in support, raising the following additional claims:

I.    Trial counsel was constitutionally deficient in failing to draw-out or argue the obvious fact that evidence suggested Michel McQueen was actually near the scene of the robbery on the night in question when witnesses tried to suggest otherwise.

II.    Trial counsel was constitutionally ineffective in failing to object to the prosecutor eliciting unsubstantiated evidence from police officer Earl Stark concerning suspect Michael McQueen having a number of alibi witnesses whom Stark checked out.  As a result of this testimony, the jury was left believing that officer Stark made a thorough investigation that eliminated Michael McQueen as a suspect.

III.    Defense counsel's failure to introduce the recovered mask and counsel's failure to show or argue to the jury that the mask contained a Caucasian hair thereupon, was clear ineffective assistance of counsel.  That evidence could have raised considerable doubts about Defendant's guilt or entirely excluded Defendant as a suspect.

Respondent filed a motion to dismiss the supplemental claims on August 31, 2006. Petitioner filed a response to the motion to dismiss on September 25, 2006.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

6

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III. Discussion.

**A. Claim # 1. Petitioner's exclusion from portions of the jury *voir dire*.**

Petitioner first claims that he was deprived of a fair trial because he was excluded from portions of the jury *voir dire,* when three prospective jurors were questioned by the court and counsel in the hallway outside of Petitioner's presence.

A criminal defendant's right to be present during *voir dire* is not a structural right whose violation constitutes *per se* error; rather, there must be prejudice in the defendant's absence from

the *voir dire* to warrant reversal.  *See United States v. Riddle,* 249 F. 3d 529, 535 (6th Cir. 2001).

Stated differently, a criminal defendant's exclusion from *voir dire* can be harmless error. *See*

*United States v. Gibbs,* 182 F. 3d 408, 437 (6th Cir. 1999).

In the present case, Petitioner has failed to show that he was prejudiced by his exclusion

from portions of the *voir dire.*  First, Petitioner is unable to show that he was prejudiced because

he was excluded from only a small portion of an otherwise lengthy *voir dire* process. *Gibbs,* 182

F. 3d at 437.   Second, Petitioner's counsel was present during the questioning of these three

venirepersons. *Id.*  Third, two of the three prospective jurors were peremptorily challenged by the

prosecutor.  Because Petitioner has not shown that these two venirepersons were excluded from the

jury panel for improper reasons, Petitioner has failed to show that he was prejudiced by his

exclusion from their *voir dire. Kilmartin v. Dormire,* 161 F. 3d 1125, 1127 (8th Cir. 1998).

With respect to the remaining juror, Petitioner contends that had he been present for the

questioning of that juror, he might have exercised a peremptory challenge to remove that juror from

the panel, even though his attorney had agreed to keep this juror on the panel.  "[T]he absence of

the defendants from the peremptory challenge conference may sometimes constitute reversible error

because courts have recognized that defendants can often be helpful in noticing or pointing out

things about certain jurors that their lawyers might not or could not see." *Gibbs,* 182 F. 3d at 438.

In the present case, however, Petitioner merely speculates that his presence during the questioning

of this juror may have resulted in a different jury pool, but he does not allege that the jury chosen

was improper.  Accordingly, he has failed to show that he was prejudiced by his exclusion from the

*voir dire* of this juror so as to entitle him to habeas relief. *See Corwin v. Johnson,* 150 F. 3d 467,

8

473 (5th Cir. 1998).

Finally, in light of the overwhelming evidence of Petitioner's guilt, based upon his numerous admissions to various witnesses, his exclusion from the *voir dire* of these three jurors was harmless. *See U.S. v. Cuchet*, 197 F.3d 1318, 1321 (11th Cir. 1999).  Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The right to testify claim.

Petitioner next claims that his right to testify in his own behalf was chilled because the trial court failed to promptly deny the prosecutor's pre-trial request to allow the witnesses to listen to Petitioner's testimony for the purpose of making a voice identification of Petitioner.

To exercise the constitutional right to testify, a defendant "must alert the trial court that he desires to testify or that there is a disagreement with defense counsel as to whether he should take the stand." *U.S. v. Chambers.* 441 F. 3d 438, 448-49 (6th Cir. 2006)(internal quotation omitted). In this case, there is no indication from the record that Petitioner wished to testify at his trial.  A habeas petitioner's claim that his right to testify was abridged is not cognizable on federal habeas review, where he did not testify at his trial. *See Taus v. Senkowski*, 293 F. Supp. 2d 238, 249 (E.D.N.Y.,2003)(*citing Luce v. United States*, 469 U.S. 38, 43 (1984)).

Moreover, Petitioner's right to testify was not chilled, because he had the option to take the stand, but, at best, made a tactical decision not to testify based on the possible risk that the witnesses may have been permitted to make a voice identification of him if he chose to testify. *See e.g. Hatter v. Warden, Iowa Men's Reformatory,* 734 F. Supp. 1505, 1519 (N.D. Iowa. 1990)(ruling that inculpatory statements which were subject to suppression as product of warrantless arrest could

be used to impeach if defendant chose to take stand and deny elements of the charged crime did not violate defendant's right to testify; not taking the stand was a tactical decision on part of defendant and his counsel).   A defendant whose failure to testify is motivated by defense strategy is not denied his Sixth Amendment right to testify. *See U.S. v. Cariello,* 536 F. Supp. 698, 703 (D.N.J. 1982).  Petitioner is therefore not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The Confrontation Clause claim.

Petitioner next claims that the prosecutor improperly elicited police testimony that Mike McQueen had been eliminated as a suspect following interviews with McQueen and several other persons.   Petitioner claims that this hearsay evidence violated his Sixth Amendment right to confrontation.

In the interest of judicial economy and brevity, the Court will assume *arguendo* that all of the police testimony regarding this issue constituted inadmissible hearsay and violated the Confrontation Clause and will instead directly perform a harmless error analysis of the statements. *See Porter v. Horn,* 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003).

A Confrontation Clause error is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Alder v. Burt,* 240 F. Supp. 2d 651, 676 (E.D. Mich. 2003). The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on direct review.  On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt.  However, the harmless error test for collateral review is different.  A federal court can grant habeas relief only if the trial error had a substantial and

10

injurious effect or influence upon the jury's verdict. *Ford v. Curtis,* 277 F. 3d 806, 809 (6th Cir. 2002)(*quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).  Under this standard, a habeas petitioner is not entitled to habeas relief unless he can establish that the trial error resulted in "actual prejudice." *Id.*  Thus, a federal habeas court can grant habeas relief only if a habeas petitioner carries the burden of showing that a confrontation clause error had a substantial and injurious effect or influence on the jury's verdict. *Bulls v. Jones,* 274 F. 3d 329, 335 (6th Cir. 2001); *Alder v. Burt,* 240 F. Supp. 2d at 676.

The Michigan Court of Appeals denied Petitioner's claim, in part, by noting that even if the police testimony concerning the elimination of McQueen as a suspect was improperly admitted, any error was harmless, in light of the testimony from Petitioner's friends that Petitioner had admitted committing the robbery and had provided details that were consistent with the events surrounding the crime.  *People v. Davis,* No. 230874, 2002 WL 1998568, at *3 (Mich.Ct. App. August 27, 2002).

In light of the fact that several witnesses testified that Petitioner had confessed his involvement in this robbery to them, the admission of this testimony was harmless error at best. *See Denny v. Gudmanson,* 252 F. 3d 896, 904-05 (7th Cir. 2001).  Petitioner is not entitled to habeas relief on his third claim.

### D.  The supplemental claims # 1, 2, and 3.  The ineffective assistance of counsel claims.

The Court will consider Petitioner's ineffective assistance of counsel claims together for the purpose of judicial economy.  Petitioner has raised these claims in his June 29, 2006 amended petition for writ of habeas corpus.

11

Respondent has moved to dismiss these claims on the ground that Petitioner moved to amend his habeas petition more than one year after he filed his original habeas petition and is thus barred from pursuing these claims pursuant to the one year statute of limitations found in 28 U.S.C. § 2244(d), contending further that these claims do not relate back to the claims contained in the original habeas petition.

An amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).

The Supreme Court has interpreted Rule 15(c)(2) to mean that "[a]n amended habeas petition . . . does not relate back (and thereby escape [the] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 125 S. Ct. 2562, 2566 (2005). It is not enough that the original and amended claims attack the same trial, conviction, or sentence. *See id.* at 2570-71. Relation back is permissible only if "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* at 2574.

Petitioner contends that his three ineffective assistance of counsel claims relate back to the claims contained in the original habeas petition because they are tied to the same common core of operative facts. Petitioner further offers a number of arguments that the one year limitations period should be equitably tolled. Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are

12

complicated." *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004)(internal quotation omitted). In the present case, it is simply easier and more judicially efficient to deny Petitioner's claims on the merits "than to untangle the complexities of the timeliness issue." *See Jones v. Bowersox,* 28 Fed. Appx. 610, 611 (8th Cir. 2002); *See also Drumm v. Warren*, No. 2005 WL 3107772, *3 (E.D. Mich. Nov 18, 2005).

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, the principles of ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that his trial counsel was ineffective for failing to rehabilitate defense witness Kay Ballard by introducing the statement that she had made to the police on the morning of the robbery, to correct the impression that Ballard was confused about which day that she had actually seen McQueen come into the Shell-Mart. Petitioner's claim is completely meritless. Defense counsel elicited from Ballard testimony that she had written out a statement to the police on the morning of the robbery, when the events were fresh in her memory, that McQueen had come into her store that day. (Tr. II, p. 189). Counsel also elicited an admission from Ballard that she had informed the police that she believed that McQueen had entered the store "the morning after this happened." (*Id.* at p. 190). Moreover, in light of the other evidence linking Petitioner to

13

these crimes, any failure by trial counsel to rehabilitate Ballard did not prejudice Petitioner so as to support an ineffective assistance of counsel claim. *See Brown v. Terhune,* 158 F. Supp. 2d 1050, 1070-71 (N.D. Cal. 2001).

Petitioner next contends that his trial counsel was ineffective for failing to object to the prosecutor eliciting testimony from the police that they had elimintated McQueen as a suspect after speaking with him and a number of witnesses.

As stated above, to assert a successful *Strickland* challenge, a petitioner must show that he has been prejudiced. *Strickland*, 466 US at 687. "[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004)(internal quotation omitted). In light of the fact that this Court has already determined that the admission of the police testimony was harmless error at best, Petitioner is unable to show that he was prejudiced by counsel's failure to object to its admission. *Id.*

Finally, Petitioner claims that counsel was ineffective in failing to introduce into evidence the pillowcase that was used by the perpetrator in order to show that it contained a Caucasian hair, thereby excluding Petitioner as the suspect. Despite Petitioner's argument, his counsel did elicit testimony from the police that none of the hair recovered from the pillowcase belonged to Petitioner or to Nicholas Payne. Under the circumstances, trial counsel was not ineffective in the manner in which he chose to present the evidence in this case that Petitioner's hair was not recovered from the mask. *See Todd v. Schomig,* 283 F. 3d 842, 850 (7th Cir. 2002).

Finally, even if counsel was deficient in failing to present additional evidence regarding the

14

possible culpability of other suspects, it did not result in prejudice to the Petitioner considering the overwhelming evidence of Petitioner's guilt, as discussed above.  *See Jackson v. Anderson,* 141 F. Supp. 2d 811, 859 (N.D. Ohio 2001).  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### E.  A Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if Petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003).  "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

15

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* --- F. Supp.2d ----, No. 2006 WL 2711824, * 6 (E.D. Mich. September 20, 2006). The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry 1] and the supplemental petition for writ of habeas corpus [docket entry 37] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied leave to appeal *in forma pauperis.*

**SO ORDERED.**

Dated:  October 18, 2006               s/Paul V. Gadola
                                       HONORABLE PAUL V. GADOLA
                                       UNITED STATES DISTRICT JUDGE

16

Certificate of Service

I hereby certify that on   October 18, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

_____Janet Van Cleve_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____Maranz Davis_____.


s/Ruth A. Brissaud_____

Ruth A. Brissaud, Case Manager

(810) 341-7845

17